**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **WESTFIELD BANK, FSB**<br>4940 Enterprise Parkway<br>Seville, Ohio 44273<br><br>Plaintiff,<br><br>vs.<br><br>**RANEY VENTURES LLC**<br>13 Palafox Place<br>Pensacola, FL 32502<br><br>Defendant. | )<br>)<br>)<br>)<br>)  **CASE NO. 1:25-cv-1620**<br>)<br>)  **JUDGE**<br>)<br>)<br>)  **COMPLAINT FOR MONEY**<br>)  **DAMAGES**<br>)<br>)<br>)<br>)<br>) |

Plaintiff Westfield Bank, FSB ("Plaintiff" or the "Bank"), by and through its undersigned counsel, for its complaint against Defendant Raney Ventures LLC ("Defendant" or "Agent," and together with Plaintiff, the "Parties"), alleges as follows:

**PARTIES**

1. Plaintiff is a federally chartered bank with its principal place of business at 4940 Enterprise Parkway, Seville, Ohio 44273.

2. Defendant is a Florida limited liability company that operates an insurance agency with a principal place of business at 13 Palafox Place, Pensacola, FL 32502. Upon information and belief, Daniel Raney, a Florida resident, is the sole member of Defendant.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states, as Plaintiff is a citizen of Ohio and Defendant is a citizen of Florida, and the amount in controversy exceeds $75,000.

4. Venue is appropriate in this Court, and this Court has personal jurisdiction over Defendant, because, pursuant to section 23 of the Agreement (defined below), Defendant agreed

that, at Plaintiff's election, any and all disputes arising out of the Agreement would be commenced in the state or federal courts located in Medina County, Ohio, and irrevocably submitted to the jurisdiction of the state or federal courts located in Medina County, Ohio.

## BACKGROUND

I.    **THE AGREEMENT.**

5. On or about December 16, 2024, the Parties entered into that certain Westfield Bank Premium Finance Referral Agreement (the "Agreement"). A true and correct copy of the Agreement is attached hereto as **Exhibit A**.

6. Pursuant to the Agreement, Defendant agreed to refer customers desiring to finance insurance policies procured by Defendant to Plaintiff to arrange for financing pursuant to separate premium finance agreements by and between Plaintiff and the applicable customer. *See* Ex. A § 6(a).

7. In the event Plaintiff decided to issue a quote to finance any such policies, Defendant then agreed to facilitate the exchange of information between the applicable borrower-insured and Plaintiff and arrange for execution of the necessary financing documentation by the borrower-insured. *See* Ex. A § 6(b)-(d).

8. Defendant further agreed that, if Plaintiff ultimately agreed to finance premiums for policies obtained by any borrowers that were referred by Defendant, and Plaintiff ultimately advanced any such premiums to Defendant, Defendant would immediately remit all returned or credited unearned premiums and any related commissions relating to such policy to Plaintiff following the termination or cancellation of the applicable policy. *See* Ex. A § 6(e).

9. Pursuant to the Agreement, Defendant also made a number of representations and warranties to Plaintiff regarding the underlying insurance policies and borrowers, including that the "Policies are in full force and effect and the premiums indicated are correct for the term of

the Insurance Policies and all other information relating to the Insurance Policies and the Insured is complete and correct." *See* Ex. A § 9(e).

10. Defendant also agreed to indemnify Plaintiff for all claims, damages, liabilities, losses, and expenses, including attorneys' fees, arising out of or relating to any breach of the Agreement, including any representation or warranty therein, any negligent acts or omissions arising out of the Agreement, or Defendant's failure to comply with any governmental law, statute, ordinance, administrative order, rule or regulation affecting the Agreement. *See* Ex. A § 13.

## II. THE BORROWERS, THE POLICIES, AND THE PFAS.

11. Plaintiff ultimately issued a number of loans (each, a "Loan," and collectively, the "Loans") to finance premiums under insurance policies (each, a "Policy," and collectively, the "Policies") that were purportedly obtained by a number of borrowers (each, a "Borrower," and collectively, the "Borrowers") that were referred to Plaintiff by Defendant pursuant to the Agreement and separate premium finance agreements (each, a "PFA," and collectively, the "PFAs") issued by Plaintiff and executed by Borrowers and Defendant in March 2025, as follows:

   a) On or about March 13, 2025, Plaintiff issued a PFA with Gulf Coast Management, LLC ("Gulf Coast"), providing for a Loan in the original amount of $126,513.00.

   b) On or about March 28, 2025, Plaintiff issued a PFA with Americus Holdings Co. ("Americus"), providing for a Loan in the original amount of $101,427.70.

12. True and correct copies of each of the foregoing PFAs are attached hereto as **Exhibit B** and **Exhibit C**.

13. Each of the PFAs generally required the applicable Borrower to make set monthly installment payments to Plaintiff to repay the Loan.

3

14. Pursuant to each of the PFAs, the applicable Borrower also assigned and granted to Plaintiff a security interest in any and all unearned premiums and dividends which may become due and payable under the applicable Policy (the "Unearned Premium Collateral"). The Borrowers also irrevocably appointed Plaintiff as their Attorney-In-Fact with the full authority to cancel the underlying Policy if the Borrower failed to make any Loan payment under the PFA or failed to comply with other terms of the PFA.

15. The PFAs also generally obligate the applicable Borrower to pay a late charge for any delinquent payments, and permit Plaintiff to recover all of its costs and expenses, including reasonable attorneys' fees, incurred as a result of Plaintiff's enforcement of the PFA upon the Borrower's default.

16. Under the PFAs, Defendant represented and warranted, among other things, that: (i) the "policies hereon are in full force and effect and the information in the schedule of policies and the premiums are correct"; (ii) that "the Borrower has authorized this transaction and recognizes the security interest assigned herein"; and (iii) "to hold in trust for [Plaintiff] any payments made or credited to the Borrower." *See* Exs. B-C, page 1 of PFAs.

17. In reliance on the representations and warranties in the Agreement and PFAs, the Plaintiff then advanced the premiums financed by Plaintiff under the Loans to the Defendant to be remitted to the applicable insurance carriers (collectively, the "Carriers").

18. Collectively, the total aggregate amount of the foregoing Loans issued by Plaintiff to the Borrowers, which were referred to Plaintiff by Defendant under the Agreement, is $227,940.70.

**III. DEFENDANT BREACHES THE AGREEMENT AND THE PFAS.**

19. In May 2025, Plaintiff's representatives contacted Defendant to request confirmation that the Policies that were financed by Plaintiff under the PFAs were, in fact, issued

and bound by the corresponding Carriers and that Plaintiff's security interest in the Unearned Premium Collateral was perfected.

20. Defendant failed to respond to these communications and has failed to provide any binders or other documentation or evidence that the Policies have been issued and bound by the Carriers.

21. The Borrowers then failed to make the required monthly payments that were due and owing on their respective Loans under the applicable PFA. The failure to make these payments constituted an event of default under each of the corresponding PFAs. As a result, Plaintiff issued notices of cancellation for the corresponding Policies to the applicable Carriers. True and correct copies of these Notices of Cancellation are attached hereto as **Exhibit D** and **Exhibit E**.

22. The Gulf Coast Policy was cancelled effective May 26, 2025, and the Americus Policies were cancelled effective May 23, 2025 (collectively, the "Cancellation Dates").

23. Based on the respective Cancellation Dates, Plaintiff is owed $230,048.47 in unearned premium under the Policies. To date, however, Plaintiff has not received any confirmation from the Carriers that the Policies were issued and that any Unearned Premium Collateral will be remitted to Plaintiff.

24. Thus, on or about June 23, 2025, Plaintiff, through counsel, provided notice to Defendant that it was in default of its obligations under the Agreement and the PFAs, and demanded immediate payment of the full outstanding balance of the foregoing Loans, which totaled $225,280.95 (the "Default Notice"). Plaintiff further demanded that Defendant promptly provide evidence that the Policies—as well as certain other Policies that were purportedly obtained by other borrowers referred to Plaintiff by Defendant—had been issued and bound by

5

the applicable Carriers. A true and correct copy of the Default Notice is attached hereto as **Exhibit F**.

25. Had the Defendant honored its obligations under the Agreement and the PFAs and remitted the Loan proceeds to the Carriers then the Unearned Premium Collateral securing the Loans would have been enough to pay the Loans in full and make the Plaintiff whole after the Polices were cancelled.

26. To date, Defendant has failed to repay the outstanding Balance under the Loans or provide any of the requested documentation in response to the Default Notice and make Plaintiff whole for the Plaintiff's losses and damages under the Agreement and PFAs.

## COUNT ONE – BREACH OF CONTRACT

27. Plaintiff restates the prior allegations as if fully set forth herein.

28. Plaintiff entered into valid and enforceable contracts with Defendant, evidenced by the Agreement and the PFAs.

29. At all times, Plaintiff performed and fulfilled all of its obligations under the Agreement and the PFAs, including by funding the Loans for the Borrowers that were referred to Plaintiff by Defendant.

30. Pursuant to section 9(e) of the Agreement, Defendant represented and warranted that each of the "Policies are in full force and effect and the premiums indicated are correct for the term of the Insurance Policies and all other information relating to the Insurance Policies and the Insured is complete and correct." *See* Ex. A § 9(e).

31. Under the PFAs, Defendant represented and warranted, among other things, that: (i) the "policies hereon are in full force and effect and the information in the schedule of policies and the premiums are correct"; (ii) that "the Borrower has authorized this transaction and

recognizes the security interest assigned herein"; and (iii) "to hold in trust for [Plaintiff] any payments made or credited to the Borrower." *See* Exs. B-C, page 1 of PFAs.

32. Defendant breached the foregoing representations and warranties by, among other things, failing to: (i) hold in trust the Loan proceeds; and (ii) remit to the applicable Carriers the premiums financed by Plaintiff under the Loans and advanced to Defendant for such purpose, thereby resulting in the Carriers failing to issue and bind the applicable Policies and causing Plaintiff's security interest in the Unearned Premium Collateral to be unperfected and the Loans unsecured.

33. Defendant further breached the Agreement by failing to promptly coordinate and remit the scheduled Unearned Premium Collateral premiums to Plaintiff relating to the Policies even though they were never issued, or following their cancellation, in accordance with section 6(e) of the Agreement.

34. Defendant's actions and the Defendant's foregoing breaches directly caused the Plaintiff's security interest in the Unearned Premium Collateral to be unperfected and the Loans unsecured, thereby causing the Plaintiff direct harm in the amount of the Balance of the Loans.

35. As a result of the foregoing breaches, Defendant is obligated to indemnify Plaintiff for the Balance, along with any other claims, damages, liabilities, losses, and expenses, including attorneys' fees, incurred by Plaintiff in connection with the foregoing violations of the Defendant, pursuant to section 13 of the Agreement.

36. As of June 23, 2025, the outstanding Balance due to Plaintiff under the Agreement and PFAs is $225,280.95, together with interest, default charges and the reasonable attorneys' fees and expenses incurred by Plaintiff in connection with its enforcement of the

Agreement and the PFAs, including the attorneys' fees incurred by Plaintiff in bringing this action.

37. Accordingly, Defendant's breach of the Agreement and the PFAs directly and proximately caused Plaintiff damages in the amount of $225,280.95, together with interest, default charges and the reasonable attorneys' fees and expenses incurred by Plaintiff in connection with its enforcement of the Agreement and the PFAs, including the attorneys' fees incurred by Plaintiff in bringing this action, which remain unpaid and due.

*[Remainder of page intentionally blank]*

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff against Defendant, in an amount to be proven at trial, but for no less than $225,280.95, together with interest, default charges and the reasonable attorneys' fees and expenses incurred by Plaintiff in connection with its enforcement of the Agreement and the PFAs, and for such other relief as the Court deems just and proper.

Dated: August 4, 2025

 /s/ James R. Bedell
Andrew G. Fiorella (0077005)
James R. Bedell (0097921)
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
127 Public Square, Suite 4900
Cleveland, Ohio 44114-2378
Telephone:  216.363.4500
Facsimile:  216.363.4588
Email:  afiorella@beneschlaw.com
            jbedell@beneschlaw.com

*Attorneys for Plaintiff Westfield Bank, FSB*